|,TERRI F. LOVE, Judge.
Plaintiff/appellee, Daniel Cheatham (“Cheatham”), and defendant/appellant, Pamela Linders (“Linders”), were involved in a vehicular accident. After a judge trial on the merits, limited to a determination of liability, the trial court found Linders 100% at fault. Linders has appealed that judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Linders and Cheatham were the drivers of two automobiles that collided on May 27, 1995, at the intersection of Opelousas and Atlantic Streets in Orleans Parish. Cheatham was traveling west on Opelou-sas Street and Linders was traveling east on Opelousas Street. The collision occurred while Cheatham was turning left onto Atlantic Street.
Cheatham filed suit against Linders and her insurer, State Farm Mutual Automobile Association. A bifurcated bench trial on the issue of liability was held on August 20,2002. After hearing testimony from the parties and from two eyewitnesses, the trial court, for reasons stated on the record, found Linders 100% bat fault in the accident. A new trial was not requested, and this appeal timely followed.

DISCUSSION

Ms. Linders argues that the trial court erred in finding her at fault in the accident because the plaintiff, as a left-turning motorist, is presumed liable for the accident, and he failed to carry his burden of proof to show that he was not at fault.
Ms. Linders states that the two eyewitnesses called to testify on behalf of the plaintiff, as well as the plaintiff himself, contradicted their prior statements and contradicted each other on basic issues important to the determination of liability. Ms. Linders further contends that their testimony is also contradicted by the only objective evidence offered at trial, pictures presented by the plaintiff of the damage to the two vehicles. Thus the main thrust of Ms. Linders’ appeal is that this is one of those cases “[wjhere documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, [and] the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.” Rosell v. ESCO, 549 So.2d 840 (La.1989).
Subsidiary to this manifest error argument is Ms. Linders’ contention that the plaintiff failed to overcome the presumption that as the left turning motorist he was responsible for the accident. Gibson v. Fisher, 401 So.2d 565 (La.App. 3 Cir.1981). The burden rests heavily on the left-turning motorist to explain how the | ^accident occurred and to show that he is free of negligence. Hughes v. Scottsdale Ins. Co., 35,043 (La.App. 2 Cir. 8/22/01), 793 So.2d 537; Severson v. St. Catherine of Sienna Catholic Church, 97-1026 (La.App.5 Cir. 2/11/98, 707 So.2d 1026).
In Mart v. Hill, 505 So.2d 1120, 1127 (La.1987), our Supreme Court announced a two-part test for the reversal of a fact finder’s determination: 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and 2) The appellate court must further determine *91 that the record establishes that the finding is clearly wrong or manifestly erroneous.
The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell, supra. When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Canter v. Koehring, 283 So.2d 716 (La.1973).
|4The plaintiff began the trial with the cross-examination of the defendant, Ms. Linders. She admitted to having no independent recollection of the route she was taking on the day of the accident. At the time of her deposition she had no independent recollection of how fast she was driving, but at the trial she testified that: “I believe it was around 25 to 30 miles [per hour].” Upon further questioning, she explained she usually drives at this pace, and she assumed that this was the approximate rate of speed that she was traveling at the time of the accident. She saw the plaintiffs vehicle for the first time only a few seconds prior to the impact.
She testified that she was not driving in the parking lane and that the front end of Mr. Cheatham’s car collided with the left front side of her car. The impact pushed her into a right turn and she did not see whether Mr. Cheatham’s was spun around or not. She explained that she neither blew her horn nor took any evasive action because there was no time to do so. She was not aware of Stanley Vincent’s presence. She was also unaware of anyone fitting Ms. Cosse’s description being present at the scene. She admitted to taking anti-depressant medications, which cause drowsiness and dizziness, but she attributed her momentary dizziness after the accident to hitting her head on the side window at the time of impact.
Ms. Linders testified that she only took her medication at night and that no restrictions were placed on her while taking the medication. She further testified that she continued to work as a registered nurse while on the medication.
|RThe first of two purported eyewitnesses called by the plaintiff was Mr. Stanley Vincent. He testified that he was coming from a “washerette” at the time of the accident with Ms. Angel Cosse as a passenger in his truck.
Mr. Stanley testified that Ms. Linders ran the stop sign, and was traveling in the parking lane/shoulder of the road at 45 to 50 miles an hour. He testified that the plaintiff had stopped and yielded first to oncoming traffic and when he had almost completed his turn, his vehicle was struck by Ms. Linders. When Ms. Linders vehicle was struck she veered to the right.
Mr. Stanley said that when the police officer arrived he told the officer he was a witness, but the police officer responded by telling him not to interfere with a police investigation, at which point Mr. Stanley walked off. He further testified to overhearing Ms. Linders admit to the plaintiff that she was at fault and that her insurance company would pay for the damage to plaintiffs automobile.
*92 The plaintiffs second witness, Ms. Angel Cosse, testified on direct that she was coming from a washeteria at the time of the accident, and that most of the time she went to the washeteria she went with Mr. Stanley Vincent the plaintiffs first witness. She testified that Ms. Linders came from the passenger side of the vehicle in which Ms. Cosse was riding as a passenger in the front seat. She further testified that Ms. Linders was driving in the parking lane, “At least about 55, something like that,” on Opelousas Street, which she thought had a posted speed limit of 20 or 25 miles per hour.
The plaintiff, Daniel Cheatham, described the accident on direct examination as follows:
Once I got to Atlantic Street and Opelousas, I made a left, which I was going to go south. I got in the intersection. I stopped and then I yield. I looked to my right and I saw a truck, a blue truck, | (¡which was like two blocks down which gave me a lot of time. The truck was coming slowly. I was crossing over slowly. So, as I got over Atlantic side, that’s when I looked to my right and I was hit, severely hit and it sped my car.
The plaintiff explained that when he looked he saw Mr. Vincent’s truck at Elmi-ra Street but did not see the defendant’s car. He estimated Mr. Vincent’s speed to have been, “About 10 to 15 miles per hour.” He further testified that he was executing his left turn at, “About ten miles an hour, just going across.” He then estimated Ms. Linders speed to have been about 60 miles per hour.
The record does reveal inconsistencies and conflicts in the testimony of Cheatham and the two eyewitnesses. The trial court acknowledged the inconsistencies, but resolved all doubt in favor of Cheatham after reviewing the evidence presented. The trial judge stated on the record:
This is one of those cases where I can almost understand why it couldn’t settle. I have witnesses on both sides that can’t remember or don’t know what happened or changed their stories. After hearing the testimony in this case and reviewing the evidence in the difficult situation this is, the Court is going to find in favor of the plaintiff, Daniel Cheatham, and against the defendant, State Farm and Pamela Linders. The Court finds Ms. Linders 100% at fault in causing the accident.
Our jurisprudence is well established that a motorist attempting to make a left turn onto a favored thoroughfare is required to ascertain that the way is clear and that the turn can be made safely without endangering or being endangered by overcoming or oncoming traffic. McIntyre v. Government Emp. Ins. Co., 413 So.2d 174 (La.App. 4 Cir. 3/9/82).
We conclude that the trial judge did not err in finding that Cheatham yielded and proceeded to make the left turn after ascertaining that the way was clear and that the turn could be made safely. The testimony of Cheatham and the two 17eyewitnesses was consistent on that issue. The two eyewitnesses also consistently testified that Linders pulled out onto Opelousas Street, almost hitting their vehicle then proceeded at an excessive rate of speed, colliding with Cheatham. This court cannot say that the trial judge was unreasonable in accepting Cheatham’s version of the accident. After a thorough review of the record, we find that the ruling of the trial court was reasonable. Accordingly, we affirm.
AFFIRMED.
BYRNES, C.J., dissents with reasons.